# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-1544

_____

United States of America,

*Plaintiff - Appellee,*

v.

Preston Pope,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 15, 2019
Filed: August 14, 2019

_____

Before COLLOTON, MELLOY, and SHEPHERD, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A jury convicted Preston Pope of bank robbery, Hobbs Act robbery, two counts of brandishing a firearm during those crimes of violence, and unlawful possession of a firearm as a previously convicted felon. *See* 18 U.S.C. §§ 1951(a), 2113(a), 924(c),

922(g).  On appeal, Pope argues that the district court[1] abused its discretion in denying his motion for a mistrial based on remarks of a prospective juror during *voir dire*.  Pope also raises for the first time a Fifth Amendment due process challenge to testimony that mentioned his post-arrest silence.  We conclude that there was no reversible error, and therefore affirm.

I.

The charges against Pope arose from armed robberies in Omaha at a Walgreens pharmacy and a branch of U.S. Bank inside a grocery store on August 11, 2015.  Witnesses reported that two suspects wearing sweatshirts, covering their faces with a ski mask or bandana, and brandishing handguns committed both crimes.  A bank employee placed a tracking device into one robber's bag, and police traced the device to an abandoned white car that had been stolen.  A witness there reported seeing two men park a white car and drive off in a green van.

Pope was apprehended a few days later after an Omaha police officer attempted to stop a green minivan with a broken taillight.  Pope fled the van through yards in a residential neighborhood until he was detained.  Police found a loaded firearm, bearing Pope's DNA, in the path of his flight.  The day before his arrest, Pope accompanied his sister when she bought a Ford Expedition with cash; one piece of the currency used in the purchase turned out to be a bait bill taken in the bank robbery.

The case proceeded to trial.  After jury selection, Pope moved for a mistrial based on remarks by a prospective juror during *voir dire*.  The district court denied the motion, and the jury eventually found Pope guilty on all counts.  The district court

---

[1]The Honorable Laurie Smith Camp, then Chief Judge, United States District Court for the District of Nebraska.

imposed a total sentence of 747 months' imprisonment, consisting of two concurrent terms of 240 months for the robbery counts and three consecutive terms of 87 months, 300 months, and 120 months on the three firearms charges.

## II.

Pope first challenges the district court's denial of his motion for a mistrial. During *voir dire*, a prospective juror stated that he was "related to all the Popes that are in town," that he has "a side of the family that has kind of like . . . reoccurring run-ins with the law," and that family members "have been arrested for using firearms during multiple different things." He opined that these relatives "generally had what was coming to them." The prospective juror also described his own troubles with the law, and admitted that he would discount the testimony of a police officer due to his negative experiences with law enforcement.

The district court ultimately struck this prospective juror, but Pope moved for a mistrial after jury selection based on the venireman's comments in front of the other prospective jurors. The district court denied the motion, reasoning that "there's no indication that this Mr. Pope is, in fact, related to any of the Popes that [the venireman] may be acquainted with," and that "the side of [the venireman's] family that gets into trouble was not specifically identified as the Pope side of the family."

Pope argues on appeal that it is "highly probable and reasonably certain" that the prospective juror's comments negatively affected the trial jury's perceptions of Pope. According to Pope, the impact of the venireman's statements on the jurors who were selected violated his right under the Sixth Amendment to a fair and impartial jury. We review the district court's ruling for abuse of discretion. *United States v. Pendleton*, 832 F.3d 934, 943 (8th Cir. 2016).

Pope's assertion that these comments rendered the entire venire biased against him is too speculative to warrant a new trial. As the district court observed, although the venireman said that he was related to "all the Popes" in town, he did not specify which side of his family had "run-ins" with the law, never said that Pope himself had prior legal problems, and clarified that he did not even know Pope. That the prospective juror himself had a criminal history did not reflect negatively on Pope, given the lack of any prior association between the two.

Pope now claims that the impact of the venireman's disputed remarks was "evident in the stares and glances" of other prospective jurors, but there is no evidence of how others reacted, and the district court is in the best position to evaluate whether comments during *voir dire* caused unfair prejudice to a party. "There are compelling institutional considerations militating in favor of appellate deference to the trial judge's evaluation of the significance of possible juror bias." *Arizona v. Washington*, 434 U.S. 497, 513 (1978). An appellate court cannot sense the atmosphere of the proceedings from a cold record, or observe the demeanor and response of prospective jurors. *Pendleton*, 832 F.3d at 943. The district court thought it sufficient to instruct the jury that it must consider only the evidence presented during trial, and that Pope was presumed innocent. Given the attenuation between the prospective juror's remarks and the defendant, and the deference due to the district court's assessment, we conclude that there was no abuse of discretion.

Pope next argues that a police officer's trial testimony about Pope's silence after police arrested him violated the Due Process Clause. He relies on *Doyle v. Ohio*, 426 U.S. 610 (1976), which held that once police provide a defendant with warnings prescribed by *Miranda v. Arizona*, 384 U.S. 436 (1966), including notice of the right to remain silent, the prosecution's use of the defendant's post-arrest silence to impeach his testimony at trial violates the Due Process Clause. 426 U.S. at 619.

The officer in this case testified about the seizure of Pope after he fled from the green minivan. When asked what he did with Pope, the officer replied: "He's being detained for driving charges, specifically, at that point. I believe he was Mirandized where he refused to speak with us. He's obviously detained in a cruiser at that point." The prosecutor then clarified, "Well, what I'm asking you is at some point are you the one that transports him?"

Pope did not object to the officer's remark at trial, but now claims that the testimony violated his right to due process. Because there was no objection, we review for plain error. To gain relief, Pope must establish that there was an obvious error that affected his substantial rights and seriously affected the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 735-36 (1993).

Pope's claim fails on at least two prongs of the plain-error analysis. First, it is not "obvious" that the officer's non-responsive answer, stating that Pope refused to speak with police at the scene of arrest, violated the Due Process Clause. "[T]he holding of *Doyle* is that the Due Process Clause bars '*the use* for impeachment purposes' of a defendant's postarrest silence." *Greer v. Miller*, 483 U.S. 756, 763 (1987) (quoting *Doyle*, 426 U.S. at 619). Later cases establish that a suspect's silence after *Miranda* warnings also may not be used as "affirmative proof" in a criminal case. *Wainwright v. Greenfield*, 474 U.S. 284, 292 (1986); *Mathenia v. Delo*, 975 F.2d 444, 452 (8th Cir. 1992). But we have declined to set bright-line rules for when an inadvertent disclosure of a defendant's postarrest silence, or use of silence merely for explanatory purposes, violates the rule of *Doyle*. *See Dansby v. Hobbs*, 766 F.3d 809, 820-21 (8th Cir. 2014); *United States v. Sweeney*, 611 F.3d 459, 473 (8th Cir. 2010). "The line between permissible references to postarrest silence for explanatory purposes and impermissible breaches of the implied *Miranda*-warning promise . . . must emerge from case-by-case applications of *Doyle* over a period of time." *Dansby*, 766 F.3d at 821.

So far as the record shows, the officer's disclosure here was nonresponsive and inadvertent. The government did not seek to prove any fact in issue by adverting to Pope's silence or to impeach any later testimony of Pope. The government made no use of the fact in arguments to the jury or elsewhere in the trial. Under those circumstances, there was not an obvious violation of the Due Process Clause that the district court should have noticed without objection.

Second, any violation of the rule in *Doyle* did not affect Pope's substantial rights. A party challenging a trial error under plain-error review must show a "reasonable probability" that, absent the alleged error, the outcome of the proceeding would have been different. *United States v. Dominguez Benitez*, 542 U.S. 74, 81-82 (2004) (internal quotation omitted). Pope cannot meet that burden.

The evidence in support of the jury's verdict was strong. DNA evidence linked Pope to a Smith & Wesson .40-caliber SD40VE handgun found when Pope was arrested. A matching Smith & Wesson .40-caliber ammunition clip was seized from the stolen white car found near the abandoned tracking device taken at the U.S. Bank robbery. A contemporaneous search of Pope's brother's home discovered a Winchester .40-caliber ammunition box, with a quantity missing, and a white sweatshirt consistent with the garment worn by one of the robbers. A witness saw two men, matching the description of Pope and his accomplice, park a white car on the night of August 11 and get into a dark green van like the vehicle driven by Pope before his arrest on August 14.

Two days after the robberies, Pope accompanied his sister when she purchased a Ford Expedition with cash that included a bait bill from the U.S. Bank robbery. Later, in a recorded jailhouse telephone call, Pope made an incriminating admission: "I should have never bought that motherf*cking truck."

Pope's evidence at trial did little to undermine the government's case. He called one witness who had tipped police that an image from surveillance footage at one robbery was a person other than Pope or his accomplice. But the tipster could not even remember providing the information, and an investigator testified that he quickly eliminated the potential suspect after determining that he did not match the person in the surveillance image. Given the strong evidence of guilt, Pope cannot demonstrate a reasonable probability that the police officer's passing comment about his refusal to speak at the scene of the arrest affected his substantial rights.

\*　　\*　　\*

For the foregoing reasons, the judgment of the district court is affirmed. We decline to address Pope's claim of ineffective assistance of counsel in the first instance, and Pope may present any such claim in a collateral proceeding under 28 U.S.C. § 2255. *See United States v. Woods*, 717 F.3d 654, 657 (8th Cir. 2013).

_____