**Sterling HORNE, Appellant,**

v.

**Myrna TRICKEY, Appellee.**

**No. 88–2340.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1989.

Decided Feb. 6, 1990.

M. Jane Matoesian, St. Louis, Mo., for appellant.

Jared Cone, Jefferson City, Mo., for appellee.

Before BOWMAN, Circuit Judge, ROSS, and HENLEY, Senior Circuit Judges.

BOWMAN, Circuit Judge.

Sterling Horne, a state prisoner serving time on an armed robbery conviction, appeals from the District Court's [1] denial of his petition for writ of habeas corpus. Horne argues (1) he was denied effective assistance of appellate counsel on direct appeal because his counsel failed to claim that Horne was convicted by a jury from which blacks were excluded in violation of the Constitution; and (2) a portion of the prosecutor's closing argument constituted an impermissible, indirect reference to Horne's failure to testify and required a mistrial. We affirm.

## I.

Horne claims that his appointed appellate counsel was ineffective in failing to brief and argue the claim that the prosecutor exercised his peremptory challenges in a racially discriminatory manner. Horne argues that because certiorari was granted in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), shortly after the Missouri Court of Appeals affirmed his conviction,[2] his counsel's deci-

---

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

2. Horne was convicted by a jury of armed robbery in May 1984. His conviction was affirmed on April 16, 1985, *State v. Horne*, 691 S.W.2d 402 (Mo.Ct.App.1985), and his request to transfer to the Missouri Supreme Court was denied on June 25, 1985. Certiorari was granted in *Batson* on April 22, 1985, *Batson*, 471 U.S. 1052, 105 S.Ct. 2111, 85 L.Ed.2d 476 (1985), after Horne's conviction was affirmed, but prior to the denial of his motion to transfer to the Mis-

souri Supreme Court. *Batson* was not decided until April 30, 1986, considerably after Horne's case became final. *See Allen v. Hardy*, 478 U.S. 255, 258 & n. 1, 106 S.Ct. 2878, 2880 & n. 1, 92 L.Ed.2d 199 (1986) ("*Batson* should not be applied retroactively on collateral review of convictions that became final before our opinion was announced"; final means where the judgment of conviction was rendered, the availability of appeal was exhausted, and the time for petition for certiorari elapsed prior to the decision in *Batson*).

sion not to advance this claim fell below the standard of "reasonably effective assistance" required by *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To succeed in such a claim Horne must show that his counsel's conduct was deficient and that his conduct so prejudiced Horne as to undermine confidence in the outcome of the trial. *See Strickland*, 466 U.S. at 687, 694, 104 S.Ct. at 2064, 2068; *Byrd v. Armontrout*, 880 F.2d 1, 4 (8th Cir.), *petition for cert. filed*, No. 89–6219 (U.S. Dec. 5, 1989); *Bell v. Lockhart*, 795 F.2d 655, 657 (8th Cir.1986) (two-part *Strickland* standard applies to claims of ineffective assistance of appellate counsel). If we determine that counsel's conduct was reasonable under the circumstances, we do not need to reach the issue of prejudice. *Byrd*, 880 F.2d at 4–5.

At trial, the state used each of its seven peremptory challenges to strike a black juror from the venire panel. Horne's trial counsel moved for a new panel of veniremen, arguing that there had been a systematic exclusion of blacks from the potential juror panel which deprived Horne of a jury composed of a representative cross-section of members of the community. This motion was denied, as was Horne's motion for a new trial based on this argument. Two members of the jury that convicted Horne and an alternate juror who did not serve were black.

At the time of Horne's direct appeal, *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), governed Fourteenth Amendment claims of racial discrimination by prosecutors in the exercise of peremptory challenges. To make a case under *Swain*, an appellant had to show that "the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries." *Id.* at 223, 85 S.Ct. at 837. The fact that all

blacks were removed from the jury in a particular case was not sufficient to overcome the presumption that the prosecutor was using the state's challenges to obtain a fair and impartial jury. *Id.* at 222, 85 S.Ct. at 836–37.

Horne's appellate counsel testified at an evidentiary hearing in the District Court that he did not advance a claim of racial discrimination in the jury selection process because he did not believe that the evidence showed a persistent pattern of racially exclusionary strikes by the prosecutor as required by *Swain*. Transcript of Hearing on Writ of Habeas Corpus at 23. Horne contends that his counsel's tactical decision not to raise a claim under *Swain* constituted ineffective assistance in light of the Supreme Court's grant of certiorari in *Batson* during the period between the affirmance of Horne's conviction by the Missouri Court of Appeals and the denial of his motion for transfer to the Missouri Supreme Court.[3] We do not agree.

Prior to the Supreme Court's decision in *Batson*, "[t]here is no question that prosecutors, trial judges, and appellate courts throughout our state and federal systems justifiably have relied on the standard of *Swain*." *Allen v. Hardy*, 478 U.S. 255, 260, 106 S.Ct. 2878, 2881, 92 L.Ed.2d 199 (1986). Defense attorneys also justifiably relied on the standard established in *Swain*. As a reviewing court, we must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time," indulging a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Counsel evaluated Horne's case in the context of the law as it existed at the time of Horne's appeal and determined that Horne did not have a viable equal protection claim under *Swain*. "To hold that counsel was not ineffective we need not find that he made the best possible choice, but that he made a reasonable one." *Byrd*, 880 F.2d

---

**3.** *See supra* note 2.

at 6. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable...." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. Here, Horne's appellate counsel considered the *Swain* issue and decided not to raise it since the record did not contain sufficient evidence to support such a claim. His decision not to raise an unwinnable issue in Horne's appeal to the Missouri Court of Appeals does not constitute constitutional ineffectiveness. To the contrary, his winnowing of the issues to eliminate a sure loser is the kind of performance that courts expect from competent counsel. *See Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986).

In effect, Horne argues that his counsel should have realized that the Supreme Court was planning a significant change in the existing law, and that the failure to anticipate this change rises to the level of constitutional ineffectiveness. We repeatedly have been unwilling to hold attorneys to such a high standard. *See e.g., Brunson v. Higgins,* 708 F.2d 1353, 1356–59 (8th Cir.1983) (failure to challenge jury panel was not ineffective assistance even though Missouri jury selection process was subsequently declared unconstitutional on the basis of a United States Supreme Court decision that was announced prior to defendant's trial); *United States v. Hach,* 615 F.2d 1203, 1206 (8th Cir.) (failure to raise defense based on government's violation of Interstate Agreement on Detainers Act (IAD) was not ineffective assistance because IAD had not been held to cover defendant's situation at time of defendant's guilty plea), *cert. denied,* 446 U.S. 912, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980).

We hold that Horne has failed to demonstrate that he received ineffective assistance of counsel on appeal.

### III.

■ Horne next contends that a portion of the prosecutor's rebuttal argument constituted an impermissible, indirect reference to Horne's failure to testify. This claim is also without merit.

During cross-examination of Detective Edward Atherton, Horne's counsel elicited testimony regarding a handwritten statement Horne gave to the police when he was arrested and this statement was read into the record. In this statement, Horne asserts that on the day of the robbery his car was stolen from a Seven Eleven store parking lot and that his brother took him to the police station to report the car stolen. In closing argument, Horne's counsel urged the jury to "read the statement that Sterling Horne made, the statement he wrote down that you have in evidence before you. You've got an instruction telling you you can credit this statement, read this. Read it over." Trial Transcript at 211.

The state argued in rebuttal that Horne's statement was not credible because at the time of the robbery the brother who allegedly took Horne to the police station had been dead for two years. The prosecutor then concluded:

> So, this free and voluntary statement is very self-serving. It also lies. He ignored that aspect. So, you can give it whatever consideration you want, but don't give it the same consideration you gave [the victim] who got up there and testified under oath and was cross-examined.

*Id.* at 218. Horne's objection and request for a mistrial were overruled.

A direct comment by the state regarding a defendant's failure to testify violates the Fifth Amendment privilege against self-incrimination. *Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965). Indirect references to defendant's failure to testify are also impermissible if they either " '(1) manifest the prosecutor's intention to call attention to the defendant's failure to testify, or (2) are such that the jury would naturally take them as a comment on the defendant's failure to testify.' " *United States v. Montgomery,* 819 F.2d 847, 853 (8th Cir. 1987) (quoting *United States v. Durant,* 730 F.2d 1180, 1184 (8th Cir.), *cert. denied,* 469 U.S. 843, 105 S.Ct. 149, 83 L.Ed.2d 87 (1984)). " 'Both tests require attention to the context of the prosecutor's remarks— the argument itself, and the larger context of the evidence introduced at trial.' " *Id.*

In this case, Horne urged the jury to credit his exculpatory written statement to

the police. The prosecution's remarks were in direct response to this argument. The state did not call attention to Horne's failure to testify, but rather to the fact that the statement was extra-judicial and not credible, and therefore should be given less weight than the in-court testimony of the victim of the crime. Viewing this in the context of the closing arguments and the evidence introduced at trial, we cannot say that the state's comments were calculated to call attention to Horne's failure to testify, or that the jury would have been likely to take them as a comment on his failure to testify. Accordingly, we hold that the prosecutor's rebuttal argument affords Horne no basis for habeas relief.

We affirm the District Court's denial of Horne's petition for writ of habeas corpus.