UNITED STATES of America, Appellee,

v.

**Darrell Levan MOSES, Appellant.**

No. 93–2210.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 10, 1993.

Decided Feb. 4, 1994.

Counsel who presented argument on behalf of the appellant was Andrea K. George of Minneapolis, Minnesota. The names of Andrea K. George and Laura A. Zimm of Minneapolis, Minnesota, appear on the brief of the appellant.

Counsel who presented argument on behalf of the appellee was Mark Pitsenbarger of Minneapolis, Minnesota. The names of Francis X. Hermann and Mark Pitsenbarger of Minneapolis, Minnesota, appear on the brief of the appellee.

Before FAGG and WOLLMAN, Circuit Judges, and VIETOR,* District Judge.

WOLLMAN, Circuit Judge.

Darrell L. Moses appeals his convictions, following a jury trial, for assault resulting in a serious bodily injury, in violation of 18 U.S.C. §§ 7(3) and 113(f), and possession of a weapon in a federal prison, in violation of 18 U.S.C. § 1791(a)(2), (b)(3), and (d)(1)(B). He

* The HONORABLE HAROLD D. VIETOR, United States District Judge for the Southern District of

argues that the district court[1] erred by denying his motion to dismiss for violation of the Speedy Trial Act, by denying his motion for mistrial following the admission of a hearsay statement identifying Moses as the assailant, and by denying his requests for an evidentiary hearing and new trial based on a juror's letters asserting that during deliberations someone may have tampered with his food and drink. We affirm.

### I.

On Friday evening, May 29, 1992, Moses and James Morris, inmates at the Federal Medical Center in Rochester, Minnesota, played cards with other inmates. At the end of the game, early Saturday morning, Morris owed Moses fifty cents, which Morris refused to pay at that time. On Saturday evening, Morris was watching television when Moses entered the television room and demanded that Morris pay him the fifty cents. Morris refused, stating that he would get the money when he went to his locker. Moses left the room, but returned a few minutes later and stood in the door holding a toothbrush handle with razor blades protruding from one end. When it came time for bed check, Morris walked by Moses, but Moses did not harm him.[2]

After brunch on Sunday morning, Morris went to the recreation yard to play basketball. Moses approached him, and the two exchanged words. Morris asked Moses whether he wanted to fight, and Moses left the recreation area. Moses returned a few minutes later, however, holding his left hand in his pocket. As he approached Morris, he picked up a weight and threw it at Morris, hitting him in the back. Morris chased Moses and caught him when Moses became entangled in a net. The two struggled, and Moses cut the left side of Morris's neck with

razor blades attached to the end of a toothbrush handle. When another inmate, Finney, forced Moses to drop the weapon, Moses ran toward Building 2–1 in the housing unit. As the cut was seven and one-half inches long and one to two inches deep, Morris was bleeding badly. Medical personnel arrived and stabilized Morris, who told a doctor that Moses had cut his neck over a card game.

### II.

#### A. Speedy Trial Act

Moses was taken into custody on September 4, 1992. On October 7, 1992, thirty-three days after his arrest, Moses was indicted. Moses argues that the district court should have granted his motion to dismiss because the government did not indict him within thirty days of his arrest, in violation of the Speedy Trial Act (the "Act"), 18 U.S.C. §§ 3161–3174.

Section 3161(b) provides, "Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." In computing the time within which an indictment must be filed, the Act excludes any period of delay "resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." *Id.* § 3161(h)(1)(F). When Moses appeared before a magistrate judge on September 8, 1992, the government moved for detention.[3] Three days later, on September 11, 1992, after a hearing, the magistrate judge ordered detention.

Moses argues that the period from September 8 to September 11 is not excluda-

---

Iowa, sitting by designation.

1. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

2. As a result of his conduct on Saturday night, Moses was charged with assault (Count III of the indictment), and the jury found him not guilty.

3. At oral argument, Moses questioned whether the government had filed a motion for detention.

Having examined the record, we are satisfied that the government did in fact move for detention on September 8, although the record does not indicate whether the motion was oral or written. Oral motions, however, also trigger a period of excludable delay. *United States v. Noone*, 913 F.2d 20, 27 n. 11 (1st Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1686, 114 L.Ed.2d 81 (1991).

ble under section 3161(h)(1)(F) because a motion for detention is not one of the motions that Federal Rule of Criminal Procedure 12(b) requires to be filed before trial. In *United States v. Hohn,* however, we rejected this argument: "Motions excludable under subsection (F) include *any pretrial motion* and are not limited to those motions enumerated" in Federal Rule of Criminal Procedure 12(b)(2). 8 F.3d 1301, 1305 (8th Cir.1993) (citing *United States v. Wilson,* 835 F.2d 1440, 1443 (D.C.Cir.1987)). Specifically, we held that the period from the filing of a petition for action on conditions of pretrial release (which is the functional equivalent of a motion to revoke pretrial detention) until the court disposed of the petition fell within section 3161(h)(1)(F) excludable delay. *Id.* Accordingly, the government's motion for detention is a pretrial motion within the meaning of section 3161(h)(1)(F). *See also United States v. Lattany,* 982 F.2d 866, 872 n. 6 (3d Cir.1992) (motions regarding defendant's pretrial detention and bond are pretrial motions), *cert. denied,* —— U.S. ——, 114 S.Ct. 97, 126 L.Ed.2d 64 (1993); *Government of Virgin Islands v. Duberry,* 923 F.2d 317, 322–23 (3d Cir.1991) (motions for release and detention are pretrial motions). The period of excludable delay resulting from the government's motion includes both the date on which the motion was filed and the date on which the motion was decided. *United States v. Long,* 900 F.2d 1270, 1274–75 (8th Cir.1990); *United States v. Papaleo,* 853 F.2d 16, 21 (1st Cir.1988); *United States v. Pirolli,* 742 F.2d 1382, 1384 (11th Cir.1984), *cert. denied,* 471 U.S. 1067, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985). Excluding the four-day period from September 8, when the government filed the motion for detention, until September 11, when the magistrate judge granted the motion, less than thirty days elapsed between Moses' arrest and indict-

ment. The district court, therefore, properly denied Moses' motion for dismissal for violation of the Speedy Trial Act.

**B. Hearsay**

Corrections Officer Alfredo Jasso, who was stationed near the entrance of Building 2–1 to supervise inmates as they entered the dining facility, noticed commotion in the recreation area when an inmate alerted him that someone was having a seizure in the compound. As Officer Jasso was heading toward the recreation area, Finney, while pointing to Moses, told Officer Jasso, "That's the [expletive] that did it," whereupon Officer Jasso pursued and apprehended Moses.

■ Moses contends that the district court should have granted his motion for a mistrial after Officer Jasso repeated Finney's statement. The district court admitted the statement for the limited purpose of explaining Officer Jasso's action rather than the truth of the matter asserted. The district court also gave a limiting instruction, admonishing the jury that the statement was not admitted for the truth of the matter asserted and that it could not be considered in deciding Moses' guilt. We find, however, that the statement could have been admitted for the truth of the matter asserted because it falls within the excited utterance exception.[4]

■ Federal Rule of Evidence 803(2) provides that "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rule. To determine whether the declarant was still under the stress of excitement caused by the assault when he made the statement, we must consider the lapse of time between the startling event and the statement, whether the state-

---

**4.** Federal Rule of Evidence 801(d)(1)(C) provides that a statement is not hearsay if the declarant testifies at trial and is subject to cross-examination concerning the statement, and the statement is "one of identification of a person made after perceiving the person." Finney, the declarant, testified at Moses' trial and was subject to cross-examination concerning his statement to Officer Jasso identifying Moses as the assailant. Whether Officer Jasso's testimony regarding the statement, as contrasted to Finney's testimony, is

governed by 801(d)(1)(c) raises the question "whether Rule 801(d)(1)(C) permits only the testimony of the identifying witness, or whether other persons present at the out-of-court identification or informed of it by the witness might testify to the fact of the identification." 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* 801–222 (1993). In view of our holding that Finney's statement was admissible as an excited utterance, we need not answer this question.

ment was made in response to an inquiry, the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event, and the subject matter of the statement. *United States v. Iron Shell,* 633 F.2d 77, 85–86 (8th Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981).

At the time the statement was made, the recreation area was chaotic, some inmates swarming around Morris and others running in all different directions searching for an officer or a nurse to treat Morris. Moses fled toward Building 2–1 immediately after Finney had forced him to drop the weapon. Seeking assistance, Finney followed Moses. Moses had not yet reached the building when Finney, running towards Officer Jasso, and without any inquiry from the officer, blurted out the obscenity identifying Moses as the assailant. Given the seriousness of Morris's wound and the brief time that elapsed between the assault and Finney's statement, it is evident that Finney was still under the stress of excitement of the assault when he made the statement. Accordingly, Moses' argument that the district court erred in denying his motion for a mistrial fails.

## C. Juror's Letter

Moses challenges the district court's ruling that two letters the court received from a juror after Moses' conviction provide no basis for an evidentiary hearing or a new trial.

 Federal Rule of Evidence 606(b) prohibits any inquiry into internal jury deliberations. *Tanner v. United States,* 483 U.S. 107, 125, 107 S.Ct. 2739, 2750, 97 L.Ed.2d 90 (1987). Thus, the district court properly declined to investigate the juror's reports of hostility during deliberations and his post-verdict belief that Moses is innocent. The comments concern internal jury deliberations and reflect the jurors' thought processes. *See United States v. Tallman,* 952 F.2d 164, 166–67 (8th Cir.1991) (holding that disagreement among the jurors during the deliberation process and allegations that jurors insulted each other not a basis to impeach jury verdict), *cert. denied,* —— U.S. ——, 112 S.Ct. 2318, 119 L.Ed.2d 237, *and,* —— U.S. ——, 112 S.Ct. 2319, 119 L.Ed.2d 237 (1992);

*see also United States v. Miller,* 806 F.2d 223, 225 (10th Cir.1986) (holding that juror's second thoughts about a verdict do not necessitate further inquiry or a new trial); *United States v. Gerardi,* 586 F.2d 896, 898 (1st Cir.1978) (same).

 Moses contends, however, that a portion of one letter falls within the exception to Rule 606(b) permitting a juror to testify concerning whether "any outside influence was improperly brought to bear upon any juror." In the first letter, the juror stated, "I do think something was slipped to me on Tues. the 26th at [a local restaurant where the jurors were taken for their meals]. Either in the hamburger that was almost raw on one half or in my coffee or water." The district court denied Moses' request for an evidentiary hearing and a new trial because the juror's letter did not raise a colorable claim of outside influence. We agree. Not every allegation of outside influence requires an evidentiary hearing. *See, e.g., United States v. Angulo,* 4 F.3d 843, 847 (9th Cir. 1993) ("An evidentiary hearing is not mandated *every* time there is an allegation of juror misconduct or bias."); *United States v. Caldwell,* 776 F.2d 989, 998 (11th Cir.1985) ("The more speculative or unsubstantiated the allegation of misconduct, the less the burden to investigate."); *King v. United States,* 576 F.2d 432, 438 (2d Cir.) ("weakly authenticated, vague, and speculative" showing of external influence does not warrant evidentiary hearing), *cert. denied,* 439 U.S. 850, 99 S.Ct. 155, 58 L.Ed.2d 154 (1978).

The statement is a vague, uncertain, isolated three-and-one-half-line suggestion that appears in a ten-page handwritten letter. The juror's second letter does not even mention his suspicion that someone tampered with his food or drink. Moreover, the juror never explains the basis of his suspicion. The court security officers who accompanied the jurors to the restaurant did not report anything unusual. The juror did not complain to the district court judge during the seven and one-half hours that the jury deliberated on January 27, the day after someone allegedly slipped something into his lunch. Nor did any of the other jurors indicate to any court officials that he behaved strangely. Addi-

tionally, when the district court polled the jury, the juror did not mention his suspicion. After reviewing the letters and considering their rambling nature and "confused and often nearly hysterical" tone, we find that the district court did not err by denying Moses' requests for an evidentiary hearing and new trial.

We have reviewed the arguments raised in Moses' pro se supplemental brief (filed by leave of court), and we conclude that they are without merit.

The convictions are affirmed.