Darrell Warren AZURE, a/k/a "Cocoa" Azure, Plaintiff/Petitioner,

v.

UNITED STATES of America, Defendant/Respondent.

Civ. No. 94–3023.
Crim. No. 87–30064–01.

United States District Court,
D. South Dakota,
Central Division.

May 7, 1996.

Fact, Report and Recommendations for Disposition, dated April 22, 1996, and filed herein on April 22, 1996, and

It further appearing that a copy of such Findings of Fact, Report and Recommendations for Disposition was served upon all parties on April 22, 1996 as required by 28 U.S.C. § 636, and that the plaintiff has not filed any written objections thereto, and

The Court having made an independent review of the entire record herein, and having made a de novo determination that the findings and recommendations of the magistrate judge should be accepted and the case dismissed,

Now, therefore,

IT IS ORDERED:

(1) That the Findings of Fact, Report and Recommendations for Disposition of the United States Magistrate Judge dated and filed herein on April 22, 1996 shall be and hereby is adopted as the Findings of Fact and Conclusions of Law herein.

(2) That the Amended 28 U.S.C. § 2255 Motions, Doc. 71 and 77, are hereby denied with prejudice.

## FINDINGS OF FACT, REPORT AND RECOMMENDATIONS FOR DISPOSITION

MORENO, United States Magistrate Judge.

The above-entitled matter[1] was referred to this Court by the District Court[2] pursuant to 28 U.S.C. § 636(b)(1)(B), R. 68, for the submission to the latter court of proposed findings of fact and recommendations for disposition of the matter.

Having carefully reviewed and considered all of the records on file in Civil No. 94–3023 and Criminal No. 87–30064 and being fully advised in the premises, this Court does now make and propose the following findings of fact, report and recommendations for disposition.

Joan Elayne Powell, Law Office of Joan Powell, Gettysburg, SD, for Darrell Warren Azure.

Mikal G. Hanson, U.S. Attorney's Office, Pierre, SD, for United States.

## ORDER OF DISMISSAL

JOHN B. JONES, Senior District Judge.

The Court having submitted the above matter to U.S. Magistrate Judge Mark A. Moreno, and such magistrate judge having conducted an evidentiary hearing in such matter on February 16, 1995, and the deposition of William J. Srstka having been taken and submitted in evidence, and such magistrate judge having submitted his Findings of

1. Plaintiff, Darrell Warren Azure, a/k/a "Cocoa" Azure, will be referred to as "Azure" and defendant, United States of America, will be referred to as "Government".

2. The Honorable John B. Jones, then United States District Judge, now Senior United States District Judge, presiding.

## PROCEDURAL HISTORY

■ Azure was charged by indictment, filed on October 1, 1987, with four counts of carnal knowledge, in violation of 18 U.S.C. §§ 1153 and 2032.[3] He was arrested, appointed counsel, arraigned (after pleading not guilty to all four charges) and thereafter detained pending trial. Following a continuance requested by Azure, a four-day jury trial began in early February, 1988. On February 5, 1988 a jury found Azure guilty of all four of the offenses charged in the indictment.

The trial court sentenced Azure to a term of imprisonment of fifteen years, to be served concurrently.

Azure thereafter appealed his conviction to the Eighth Circuit Court of Appeals, which affirmed his conviction in an unpublished opinion. *United States v. Azure*, 873 F.2d 1445 (8th Cir.1989).

On July 27, 1994, Azure filed his initial Motion pursuant to 28 U.S.C. § 2255. After counsel was appointed to represent him, he filed an Amended Motion, and following an inquiry letter from the Court, filed a letter clarifying the issues for which habeas relief was being sought.[4] An evidentiary hearing was thereafter held on February 16, 1995 and Azure was allowed to supplement the record with deposition testimony taken on September 21, 1995.

## FACTUAL BACKGROUND

The carnal knowledge charges came to light during an interview conducted by Karen Totten, a social worker for the State of South Dakota, of R.N., a nine-year-old female child, and one of the victims. R.N. told Totten that she had been sexually abused by her first cousin, Azure. Totten arranged for R.N. to see Dr. Raymond Owens, a pediatrician, and Dr. Mary Curran, a clinical psychologist with expertise in working with sexually-abused children. In her interview with Curran, R.N. indicated that her female cousin, eleven-year-old G.M., had been sexually abused by Azure as well. During the course of Curran's interviews, both R.N. and G.M. demonstrated through the use of anatomically correct dolls how they had been sexually abused.

At trial, R.N. testified that Azure had touched her in a way that made her scared on three separate occasions while she was visiting her grandmother in Fort Thompson, South Dakota. R.N. also testified that on each occasion, Azure had penetrated her "private part". G.M. was unable to testify as to any of the details regarding the encounter with Azure, apparently because of the courtroom setting, but did state that Azure had touched her in a way that made her sad or scared. Nonetheless, G.M., along with R.N., did mark anatomically correct diagrams at trial to demonstrate what had taken place.

**3.** 18 U.S.C. § 2032 was repealed by Congress prior to the time Azure was indicted. *See* P.L. 99–646, § 87(c)(1), (e), 100 Stat. 3623 (Nov. 10, 1986). The repeal became effective thirty days after the enactment of the law. The repealed statute, however, applied to the carnal knowledge offenses charged in the indictment which were alleged to have been committed between December 1, 1985 and November 30, 1986. To conclude otherwise would ignore the general savings provision found in 1 U.S.C. § 109 and the well-settled and analogous ex post facto rule. *See Martin v. United States*, 989 F.2d 271, 272–76 (8th Cir.), *cert. denied*, — U.S. —, 114 S.Ct. 475, 126 L.Ed.2d 426 (1993); *United States v. Stillwell*, 854 F.2d 1045, 1048 (7th Cir.), *cert. denied*, 488 U.S. 973, 109 S.Ct. 508, 102 L.Ed.2d 544 (1988); *United States v. Jackson*, 835 F.2d 1195, 1197 (7th Cir.1987), *cert. denied*, 485 U.S. 969, 108 S.Ct. 1244, 99 L.Ed.2d 442 (1988); *United States v. Breier*, 813 F.2d 212, 215 (9th Cir.1987), *cert. denied*, 485 U.S. 960, 108 S.Ct. 1222, 99 L.Ed.2d 423 (1988); *United States v. Mechem*, 509 F.2d 1193, 1194, n. 3 (10th Cir.

1975); *see also, Warden v. Marrero*, 417 U.S. 653, 660, 94 S.Ct. 2532, 2536–37, 41 L.Ed.2d 383 (1974) (general savings clause applies to repeals followed by reenactments). As such, Azure's claim that the trial court lacked jurisdiction because of the pre-indictment repeal of § 2032, *see* R. 72, insofar as the same is still being argued by him as a ground for habeas relief, *see* nn. 4 & 8, *infra*, is wholly lacking in merit.

**4.** Azure was initially given leave to amend his Motion after counsel was appointed, R. 70 and then was directed by the Court to "identify each and every issue and claim for which he seeks § 2255 relief" R. 76. In response, Azure filed a letter stating *inter alia* as follows:

> Here, petitioner raises several points of error at trial, but after reviewing the court's documents and transcript, one error of constitutional dimension remains:
> *Trial counsel failed to object, move for mistrial, or appeal issue of juror bias or prejudice.*
> R. 77; *see also*, Evid.Hrg.Tr. 13–15.

Azure relied primarily on an alibi defense to rebut the Government's assertions. The jury, however, returned guilty verdicts on all four charges after rather short deliberations.

Young's trial counsel, William J. Srstka, Jr., then filed a timely notice of appeal with the Eighth Circuit Court of Appeals. Following the submission of the appeal on the trial court record and the briefs of the parties, the Eighth Circuit, without oral argument, affirmed Azure's convictions.

Approximately five and one-half years later, Azure filed a Motion under § 2255 alleging ineffective assistance of counsel on the part of Srstka, and seeking habeas relief. Subsequently, counsel was appointed for him and his ineffectiveness claim was parroted down and clarified.

## DISCUSSION

### INEFFECTIVE ASSISTANCE OF COUNSEL.

#### A. *Background.*

During a recess on the third day of trial, Eugene Nagel, a sitting juror, went to the Clerk's office and asked Deputy Clerk Kathy Hammond if it was possible for him to speak to Curran about an unrelated matter involving his daughter:

> It was shortly before one o'clock today a juror by the name of Eugene Nagel came into my office and asked if it would be possible to speak to the witness who had been on the stand, referring to Dr. Curran. He stated after he had listened to some of her testimony he was concerned that he might know of a crime abuse case. Specifically his daughter. He went on to state that there is this home that she used to, referring to his daughter, used to love to go to and now she is frightened of it and hates to go there and she seems to be showing some signs that Dr. Curran referred to and he wanted to speak to her before she left, wanted to know what arrangements could be made. At that time I told him I would check it out and get back to him at first recess and that was the end of the conversation.

T.Tr. 346. The trial court, after being promptly advised of the conversation, direct-ed Hammond not to have any further discussion with Nagel. *Id.* at 347. The court then advised counsel of the incident during a bench conference and made a record concerning the same in chambers. *Id.* at 345–51. After being informed of the situation, the court inquired whether there was "anything else" from counsel. *Id.* at 348. Srstka replied, "I can't think of anything. Racking my brain, I can't think of anything that would apply here, Your Honor." *Id.* Subsequently, after the prosecutor asked if it would be "all right" for him to make arrangements for Nagel to contact Curran after the trial, Srstka stated as follows:

> I'm wondering, the more I think about this if this wouldn't color his thinking. Now, he's up there thinking about that. He has, you know, there is questions asked on voir dire as to victim of children or a member of the family been a victim of a crime and I'm wondering if he can remain fair and impartial. I'm sitting here thinking about it, Your Honor.

*Id.* at 350. When the court remarked that it didn't "really wish to exacerbate anything by calling him in here and questioning him", Srstka added, "Might be a little better just to leave it. I'd like to reserve the right to think about it overnight if I could." *Id.* at 351. The court afforded Srstka this opportunity, but no mention was made of the Nagel incident again.

Azure now claims that he received ineffective assistance of counsel. He contends that Srstka should have objected, moved for a mistrial or appealed on the basis of jury bias or prejudice and that Srstka's failure to do so amounted to incompetent representation. He also seemingly contends that Srstka was ineffective because he failed to raise other issues in Azure's direct appeal.

#### B. *Juror Testimony.*

■ Before addressing the merits of Azure's ineffective assistance of counsel claim, a few words should be said about a ruling made by this Court under Fed.R.Evid. 606(b).

At the evidentiary hearing, Azure called Nagel as a witness. Azure sought to have

Nagel testify concerning his mental impressions of trial witnesses in an effort to establish that he and/or the jury were biased or prejudiced against Azure. Evid.Hrg.Tr. 44–45. Azure also inquired as to whether the matter Nagel discussed with Hammond seven (7) years earlier, had an effect on the way Nagel voted during the course of jury deliberations. *Id.* at 46. The Government objected to this line of questioning and this Court sustained the objections under Fed.R.Evid. 606(b). Azure then asked the Court to reconsider its rulings, R.106, and the Court found no reason to modify the same and denied his reconsideration request. Tr. of Oral Argument, Depo. of Wm. Srstka at 2–3.

Fed.R.Evid. 606(b) generally prohibits a juror from impeaching his or her verdict.[4] *United States v. Swinton,* 75 F.3d 374, 380 (8th Cir.1996); *United States v. Krall,* 835 F.2d 711, 715–16 (8th Cir.1987). The only exception to this rule is that "a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." Fed.R. of Evid. 606(b).

Nagel testified that there was no "outside influence that was brought to bear on [him] or any of the other jurors during the course of the trial," Evid.Hrg.Tr. 50, and that his conversation with Hammond was not based on something he had read or something someone had told him, Evid.Hrg.Tr. 48. Instead, Nagel indicated that the conversation was triggered by courtroom testimony and resulted from "putting two and two together" and applying what he heard in court to his daughter's situation. Evid.Hrg.Tr. 48–49. Given this record, and the absence of any proof to the contrary, this Court is unable to find that Nagel or any other juror was affected by an "outside influence". *See Tanner v.*

*United States,* 483 U.S. 107, 117–27, 107 S.Ct. 2739, 2745–51, 97 L.Ed.2d 90 (1987); *United States v. Blumeyer,* 62 F.3d 1013, 1015–18 (8th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1263, 134 L.Ed.2d 212 (1996); *United States v. Moses,* 15 F.3d 774, 778–79 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2691, 129 L.Ed.2d 822 (1994); *see generally,* C. Wright & V. Gold, *Federal Practice & Procedure,* § 6075 at 453–71 (1990).

Nor can the Court find that Nagel's comments to Hammond constitute "extraneous prejudicial information" within the meaning of Rule 606(b). *See United States v. Krall,* 835 F.2d at 715–16; *Scogin v. Century Fitness, Inc.,* 780 F.2d 1316, 1318–20 (8th Cir. 1985); *c.f. United States v. Swinton,* 75 F.3d at 380–82. In *United States v. Bassler,* 651 F.2d 600, 602 (8th Cir.1981), *cert. denied,* 454 U.S. 1151, 102 S.Ct. 1018, 71 L.Ed.2d 305 (1982), the Eighth Circuit observed:

> Extrinsic or extraneous influences include publicity received and discussed in the jury room, matters considered by the court but not admitted into evidence, and communications or other contact between jurors and outside persons. Extrinsic evidence or extraneous influences may be grounds for impeaching a verdict.

In the instant case, Nagel's brief conversation with Hammond does not fit within any of the categories set forth above. Significantly, Nagel at no time ever discussed his conversation, or the substance thereof, with any of the jurors or voiced his suspicions or thought processes concerning his daughter while in the jury room. *See United States v. Eagle,* 539 F.2d 1166, 1170 (8th Cir.1976), *cert. denied,* 429 U.S. 1110, 97 S.Ct. 1146, 51 L.Ed.2d 563 (1977) (where juror's speculations about a defendant and his involvement in an unrelated murder of two FBI agents did not constitute an "extraneous influence"

---

4. Fed.R.Evid. 606(b) reads as follows:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that

a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

because the juror never voiced his suspicions in the jury room);[5] *see also, United States v. Gambina,* 564 F.2d 22, 24 (8th Cir.1977); *Poches v. J.J. Newberry Co.,* 549 F.2d 1166, 1169 (8th Cir.1977); *United States v. Williams,* 545 F.2d 47, 51–52 (8th Cir.1976). Moreover, the record is devoid of any evidence that shows or even suggests that Nagel and his fellow jurors discussed specific extra-record facts relating to Azure and that Azure was likely to have been prejudiced thereby. *See Swinton,* 75 F.3d at 381 (citing *United States ex rel Owen v. McMann,* 435 F.2d 813, 818 n. 5 (2d. Cir.1970), *cert. denied,* 402 U.S. 906, 91 S.Ct. 1373, 28 L.Ed.2d 646 (1971)).

Because Nagel's statements to Hammond did not, in this Court's view, raise a colorable claim of "outside influence", *Tanner,* 483 U.S. at 116–27, 107 S.Ct. at 2745–51; *Moses,* 15 F.3d at 778–79; or "extraneous prejudicial information" relating to a substantive issue in the case, *see Blumeyer,* 62 F.3d at 1015–18; *Krall,* 835 F.2d at 715–16; *Eagle,* 539 F.2d at 1169–70, they were inadmissible and did not warrant consideration at the evidentiary hearing. In any event, Azure has not met the established standards governing inquiries into allegations of juror misconduct or shown actual prejudice or some reasonable likelihood that the statements in question affected the verdict. *See Swinton,* 75 F.3d at 382; *Blumeyer,* 62 F.3d at 1015–18; *Moses,* 15 F.3d at 778–79.

## C. *Standard of Review.*

█ The Sixth Amendment right to counsel both strengthens and protects our fundamental due-process right to fair trials. *See Strickland v. Washington,* 466 U.S. 668, 684–85, 104 S.Ct. 2052, 2062–63, 80 L.Ed.2d 674 (1984). Our Constitution "recognizes the right to the assistance of counsel because it envisions counsel playing a role that is critical to the ability of the adversarial system to produce just results." *Id.* at 685, 104 S.Ct. at 2063. Stated otherwise, the right to counsel has a purpose; an accused's lawyer has a constitutional job to do, that is, provide *effec-*

tive assistance of counsel. *Montanye v. United States,* 77 F.3d 226, 229 (8th Cir. 1996), (quoting *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2063–64). A less demanding interpretation of the Sixth Amendment "would permit a serious risk of injustice to infect criminal trials." *Driscoll v. Delo,* 71 F.3d 701, 706 (8th Cir.1995).

█ "The well-established framework for analyzing ineffective assistance of counsel claims reflects the Sixth Amendment's focus on assuring the "fairness" and "legitimacy" of our adversary system." *Payne v. United States,* 78 F.3d 343, 345 (8th Cir.1996) (citing *Strickland* ). The *Strickland* standard, "although by no means insurmountable, is highly demanding." *Payne,* 78 F.3d at 345 (quoting *Kimmelman v. Morrison,* 477 U.S. 365, 382, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986)). The analysis is two-fold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. With respect to the performance aspect of the *Strickland* test, a defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 688, 104 S.Ct. at 2065. Put another way, a defendant must show that identified acts or omissions "were outside the wide range of professionally competent assistance." *Seehan v. State of Iowa,* 72 F.3d 607, 608 (1995) (en banc) (quoting *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066), *petition for cert. filed,* No. 95–8258 (March 12, 1996). Judicial review of counsel's performance is highly deferential; a court must indulge a strong presumption that counsel's conduct falls within the wide range of professionally reasonable

---

**5.** In fact, the Eighth Circuit in *Eagle* pointed out that the lack of disclosure on the part of a juror of his suspicions in the jury room was "fatal" to

the defendant's juror misconduct argument. 539 F.2d at 1170.

assistance and sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. For that reason,

> Strategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after a less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.

*Id.* at 690, 104 S.Ct. at 2066. Moreover, as the Supreme Court has made clear, a court must "make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689, 104 S.Ct. at 2065.

■■■■ Professionally unreasonable trial errors, however, *do not satisfy the burden of proving ineffectiveness absent a showing of prejudice to the defendant. Strickland*, 466 U.S. at 691–92, 104 S.Ct. at 2066–67; *Driscoll*, 71 F.3d at 706. A court will set aside a judgment of conviction only when counsel's deficient performance renders the result of the proceeding unreliable or fundamentally unfair.[6] *Lockhart v. Fretwell*, 506 U.S. 364, 374, 113 S.Ct. 838, 845, 122 L.Ed.2d 180 (1993); *see Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Kimmelman*, 477 U.S. at 393, 106 S.Ct. at 2592 (Powell, J., concurring); *Jenner v. Class*, 79 F.3d 736, 738–39 (8th Cir.1996). In other words, " 'counsel's unprofessional errors [must] so upset the adversarial balance between the defense and the prosecution that the trial was rendered unfair and the verdict suspect.' ". *Lockhart*, 506 U.S. at 369, 113 S.Ct. at 842 (*quoting Nix v. Whiteside*, 475 U.S. 157, 175, 106 S.Ct. 988, 998, 89 L.Ed.2d 123 (1986)). Unreliability or unfairness, though, does not result unless the ineffectiveness of counsel deprives a defendant of a substantive or procedural right to which the law entitles him or her. *Fretwell*, 506 U.S. at 372, 113 S.Ct. at 844.

### D. *Failure to Object and/or Move for a Mistrial.*

Azure first argues that he was denied effective assistance of counsel by virtue of Srstka's failure to object or move for a mistrial on the ground of juror bias or prejudice.

■■■ At the outset, Azure cites no dispositive authority in support of his argument that a juror's brief inquiry of a clerk as to whether "it would be possible" to speak with a witness establishes bias or prejudice. Furthermore, as the trial court observed, a midtrial voir dire of Nagel might very well have "exacerbate[d]" the situation. T.Tr. 351.

More importantly, Azure has failed to demonstrate that Srstka's omissions were unreasonable at the time or sufficient to overcome the presumption that, under the circumstances, his conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Srstka consulted with Azure, and did a background check of the jury panel but because the trial court conducted voir dire, Srstka was not able to ask any questions of potential jurors. Evid.Hrg.Tr. 60–61, 68. Srstka was concerned about making a "big issue" out of the Nagel incident and decided, in light of the posture of Azure's case and what had transpired thus far, that it would be better not to object or move for a mistrial. *Id.* at 72. In explaining his decision, Srstka testified that he always tries to talk to jurors after a trial and that "jurors don't like a lot of objections ... and don't like attorneys trying to keep evidence away from them." *Id.* He went on to say that "to bring this juror in and to ask him a lot of questions would just sink it into his mind much further

---

**6.** In *Strickland*, the Supreme Court stated rather definitively that counsel's performance is prejudicial if "there is a reasonable probability that, but for, counsel's errors, the result of the proceeding would have been different." 466 U.S. at 694, 104 S.Ct. at 2068. More recently, the Court made clear that a " 'defendant need not establish that the attorney's deficient performance more likely than not altered the outcome in order to establish prejudice under *Strickland*' " and that

the reasonable probability standard "is not a sufficiency of evidence test." *Kyles v. Whitley*, —— U.S. ——, ——, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995) (*quoting Nix v. Whiteside*, 475 U.S. 157, 175, 106 S.Ct. 988, 998, 89 L.Ed.2d 123 (1986)). Rather, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Weekley v. Jones*, 76 F.3d 1459, 1462 (8th Cir.1996) (en banc).

and damage his attitude." *Id.* Srstka also testified that he watches jurors to see if they are listening and to see how they react to a witness or respond nonverbally to questions, and that he liked Nagel and thought Nagel would be a good juror for Azure. *Id.* at 73. Finally, Srstka testified that he thought about the incident overnight and decided, as a matter of trial strategy, "to let sleeping dogs lie." *Id.* at 75. This strategic choice was the result of a reasonable professional judgment which this Court declines to second guess by exploiting the benefits of hindsight. *Strickland,* 466 U.S. at 689, 699, 104 S.Ct. at 2065, 2070–71; *Thompson v. United States,* 61 F.3d 586, 587 (8th Cir.1995). From the record now before the Court, there can be little question, even without the application of the presumption of adequate performance, that Srstka's decision was well within the bounds of competence demanded of criminal attorneys similarly situated. *See Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

In any event, Azure has failed to articulate how he was prejudiced by Srstka's omissions or show that the omissions actually had an adverse effect on his defense or the outcome of the case, or that they undermined the reliability of the result of the proceeding. *Id.* at 693, 104 S.Ct. at 2067. Absent any showing of deficient performance and prejudice or a showing that the result of the proceeding was fundamentally unfair or unreliable, Azure cannot prevail. *Id.* at 700, 104 S.Ct. at 2071, *Fretwell,* 506 U.S. at 369–72, 113 S.Ct. at 842–44. *see also, Jenner,* 79 F.3d at 738–39, 741–42. Here, Azure has failed to make the requisite showing, and for this reason his argument must likewise fail.

### E. *Failure to Appeal Juror Bias/Prejudice Issue.*

Azure next argues that Srstka should have included the juror bias/prejudice issue in his direct appeal to the Eighth Circuit and that his failure to do so amounted to ineffective assistance of counsel. In support of his argument, Azure cites *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and contends that Srstka had a constitutional duty to raise "*all* possible issues", regardless of their merit or fri-

volity, requested by Azure on appeal. R. 72, 77.

The Supreme Court, however, clearly rejected this argument in *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). In *Jones,* the Supreme Court reversed the Second Circuit's per se rule requiring that appellate counsel raise every non-frivolous issue requested by his/her client. 463 U.S. at 750, 103 S.Ct. at 3312. In announcing its per se rule, the Appeals Court relied primarily on *Anders. Id.* 463 U.S. at 750–51, 103 S.Ct. at 3312–13. The Supreme Court responded by initially pointing out that neither *Anders* nor any other decision of the Court suggested that an indigent defendant had a constitutional right to compel appointed counsel to press on nonfrivolous claims requested by the client, if counsel, as a matter of professional judgment, decided not to do so. *Id.* at 751, 103 S.Ct. at 3313. The Supreme Court then observed that:

> By promulgating a per se rule that the client, not the professional advocate, must be allowed to decide what issues are to be pressed, the Court of Appeals seriously undermines the ability of counsel to present the client's case in accord with counsel's professional evaluation.
>
> Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.
>
> \* \* \* \* \* \*
>
> A brief that raises every colorable issue runs the risk of burying good arguments—those that, in the words of the great advocate John W. Davis, "go for the jugular."—in a verbal mound made up of strong and weak contentions.
>
> This Court's decision in *Anders,* far from giving support to the new per se rule announced by the Court of Appeals, is to the contrary. *Anders* recognized that the role of the advocate "requires that he support his client's appeal to the best of his ability." Here, the appointed counsel did just that. For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every

"colorable" claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies *Anders*. Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* 463 U.S. at 751–54, 103 S.Ct. at 3313–14 (citations omitted). *See also, Smith v. Murray*, 477 U.S. 527, 535–36, 106 S.Ct. 2661, 2666–67, 91 L.Ed.2d 434 (1986); *Blair v. Armontrout*, 976 F.2d 1130, 1139 (8th Cir. 1992), *cert. denied*, 508 U.S. 916, 113 S.Ct. 2357, 124 L.Ed.2d 265 (1993).

■ Aside from this, Srstka's failure or refusal to raise the juror bias/prejudice issue on appeal was not objectively unreasonable under the circumstances. Srstka, an experienced trial attorney and now a state court judge, Evid.Hrg.Tr. 68–71, Srstka Depo.Tr. at 12, submitted a thirty-four page brief on direct appeal raising three issues,[7] Evid. Hrg.Tr. 74. He considered the issues Azure wanted to press on appeal, including the juror bias/prejudice issue which he had his associate research, and found them to be untenable. Srstka Depo.Tr. 6. After doing so, and after consulting with his associate and exercising his "professional judgment based [on] the evidence", Srstka Depo. at 5–6, Srstka decided to concentrate his efforts on raising arguments he believed were winnable and avoid the "shotgun approach". Evid.Hrg.Tr. 68, 71. "This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith*, 477 U.S. at 536, 106 S.Ct. at 2661, (*quoting Jones*, 463 U.S. at 751–52, 103 S.Ct. at 3312); *see also, Garrett v. United States*, 78 F.3d 1296, 1306 (8th Cir.1996); *Charron v. Gammon*, 69 F.3d 851, 858 (8th Cir.1995); *Sidebottom v. Delo*, 46 F.3d 744, 759 (8th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 144, 133 L.Ed.2d 90 (1995); *Otey v. Grammer*, 859 F.2d 575, 580 (8th Cir.1988), *cert. denied*, 497 U.S. 1031, 110 S.Ct. 3288, 111 L.Ed.2d 796 (1990). Srstka certainly was not required to raise every conceivable issue on appeal and cannot be faulted now for choosing not to pursue the juror issue. *Id.; see also, Horne v. Trickey*, 895 F.2d 497, 498–500 (8th Cir.1990). Nor can he be faulted for not making the best possible choice, when the choice he did make was a reasonable one. *Byrd v. Armontrout*, 880 F.2d 1, 6 (8th Cir. 1989), *cert. denied*, 494 U.S. 1019, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1990). The Eighth Circuit summed it up well in *Simmons v. Lockhart*, 915 F.2d 372 (8th Cir.1990):

> Certainly previously-appointed counsel might have chosen to press this issue on appeal, and such a choice would have been reasonable.... Law is an art, not a science, and many questions that attorneys must decide are questions of judgment and degree. Among the most difficult are decisions as to what issues to press on appeal.... It is possible to criticize [counsel's] choice in hindsight. Perhaps a choice to press the issue would have been better. But we are dealing, after all, with fallible human beings, and a demand for perfection ... cannot be met.

*Id.* at 375.

■ In any event, Azure has failed to show how he was prejudiced by Srstka's action or lack thereof or prove that as a consequence of Srstka's failure to raise the issue complained of, the result of the proceeding was fundamentally unfair or unreliable. *Fretwell*, 506 U.S. at 369–71, 113 S.Ct. at 842–43; *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *see also, Sidebottom*, 46 F.3d at 759; *Horne*, 895 F.2d at 499–500. Because of the lack of any showing or evidence to the contrary, this Court must conclude that Srstka was exercising sound appellate strategy in the selection and "winnowing" of which issues to bring on appeal. *Sidebottom*, 46 F.3d at 759.

Inasmuch as Azure has failed to sustain his burden of proving that Srstka's performance was deficient and so prejudicial that it resulted in an outcome that was unreliable or fundamentally unfair, *see Strickland*, 466 U.S. at 687, 694, 700, 104 S.Ct. at 2064, 2068, 2071; *Fretwell*, 506 U.S. at 369–72, 113 S.Ct.

7. Although Srstka's associate, Lee C. McCahren, actually researched and wrote the brief, Srstka decided what issues should be raised on appeal, oversaw McCahren's work and reviewed the brief before it was filed with the Eight Circuit. Evid.Hrg.Tr. 66; Srstka Depo.Tr. 7–9.

at 842–44, he is not entitled to relief on his ineffective assistance of appellate counsel argument.

### F. *Failure to Raise Other Issues on Appeal.*

Finally, while not altogether clear, it appears that Azure also asserts that Srstka's representation was ineffective because of Srstka's neglect in not briefing and arguing other issues on appeal.[8] *See* R. 72; *but see,* R. 77; Evid.Hrg.Tr. 13–15.

 Azure, however, fails to elaborate or otherwise explain these arguments with any modicum of particularity or point to facts in the record which substantiate any claim of trial court error. His assertion, therefore, is subject to dismissal as being conclusory and lacking the sufficiency necessary to state a claim for relief. *Hollis v. United States,* 796 F.2d 1043, 1046 (8th Cir.) ("vague and conclusory allegations are not sufficient to state a ground for relief under 28 U.S.C. § 2255"), *cert. denied,* 479 U.S. 965, 107 S.Ct. 468, 93 L.Ed.2d 412 (1986); *Voytik v. United States,* 778 F.2d 1306, 1308–10 (8th Cir.1985) (no evidentiary hearing required where prisoner failed to make specific, non-conclusory allegations); *Smith v. United States,* 677 F.2d 39, 41 (8th Cir.1982) (conclusory allegations, unsupported by any specifics, are subject to dismissal); *Smith v. United States,* 618 F.2d 507, 510 (8th Cir.1980) (wholly conclusory claims will not suffice to command an evidentiary hearing).

Even assuming otherwise, *arguendo,* Azure nonetheless cannot succeed in his assertion for the same reasons already discussed herein in § E, *ante* at 679–680. Srstka thoroughly briefed three issues that in his professional judgment were not frivolous, and offered some hope of success on appeal. He chose not to dilute his effort through the inclusion of weaker arguments. This kind of process is precisely what courts expect from competent counsel and falls far short of meeting the rigorous standard of *Strickland* and its progeny. *Smith,* 477 U.S. at 536, 106 S.Ct. at 2667; *see also, Garrett,* 78 F.3d at 1306–07.

### CONCLUSION AND RECOMMENDATION

Based on the foregoing and in accordance with 28 U.S.C. § 636(b)(1), this Court concludes that Azure's request for relief under 28 U.S.C. § 2255 should be denied and accordingly recommends that his Amended Motion, R. 71, as modified and clarified by his November 18, 1994 letter, R. 77, be dismissed in its entirety and with prejudice.

Dated this 23rd day of April, 1996 at Pierre, South Dakota.

---

8. Despite the fact that Azure, by and through his habeas counsel, filed a letter attempting to clarify the issues for review, R. 77, it is still not crystal clear that he intended to abandon his earlier ineffective assistance contention based on Srstka's failure to raise other issues on appeal, R.72. While believing that this contention was merged into and superseded by Azure's letter, in an abundance of caution, the Court will nonetheless proceed to pass on the contention as though it were preserved for review.